UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM J. AMBROSE,

                        Plaintiff,

                    - against -

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM AND ORDER**

07-CV-4072 (DRH)

**A P P E A R A N C E S :**

**CHRISTOPHER JAMES BOWES, ESQ.**
Attorney for Plaintiff
54 Cobblestone Drive
Shoreham, New York 11786

**BENTON J. CAMPBELL,**
**UNITED STATES ATTORNEY**
Attorney for Defendant
610 Federal Plaza
Central Islip, New York 11722
By: James H. Knapp, Assistant U.S. Attorney

**HURLEY, District Judge:**

*INTRODUCTION*

      Plaintiff William J. Ambrose ("Plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the

"Commissioner" or "Defendant") which denied his claim for disability insurance benefits

("DIB").  Presently before the Court are Plaintiff's and Defendant's motions for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).  For the reasons discussed

below, both motions are denied and the case is remanded for further administrative proceedings.

**BACKGROUND**

## I.      Procedural Background

Plaintiff applied for disability benefits on May 16, 2005 alleging disability since May 16, 2004.  (Tr. 19, 45, 52, 58, 237-38.)[1]  His claim was denied on July 23, 2005 (Tr. 46-49.)  Plaintiff filed a timely request for a hearing, and on March 12, 2007, appeared with counsel at the administrative hearing held before Administrative Law Judge ("ALJ") Michael S. London. (Tr. 22, 34, 230-54.)

ALJ London issued a decision on March 27, 2007 denying Plaintiff's claim.  (Tr. 16-23.) The ALJ found that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision.  According to the ALJ, Plaintiff "is severely impaired by lumbar disc disease with a herniation at L2-3, but retains a residual functional capacity for sedentary work . . .  [although] precluded from performing his past relevant heavy work as a plumber."  (Tr. 21.)

Thereafter the matter was appealed to the Appeals Council who declined to review the matter. (Tr. 4-6.)  This action ensued.

## II.     Factual Background

### A.      Non-Medical Evidence

Plaintiff was born on July 15, 1962.  (Tr. 233.)  He graduated high school and attended two years of community college.  (Tr. 8.)  He is single and lives with his mother. (Tr. 234, 246.)

For approximately twenty years, from 1984 to May 2004, Plaintiff worked as a plumber. (Tr. 234.)   Plaintiff testified that on January 26, 2004, he felt a "pop" in his back while lifting a

---

[1]  References to "Tr." are to the Administrative Record filed in this case.

rigid 300 pipe threading machine. (Tr. 234-35).  After this incident he tried to continue to work

but missed a lot of time due to the pain; he finally stopped working in May 2004. (Tr. 237.)

Plaintiff described his pain "like there is a hot knife stuck in my back actually and the

pain radiates into my groin, into my hamstring areas on both legs."  (Tr. 238.)   He described his

conditions as having gotten worse since the injury and his pain as constant.  (Tr. 240.)  He

underwent physical therapy for eight months and three epidural injections but testified that

neither provided relief from the pain.  (Tr. 241-42.) At the time of the hearing, he was taking

Vicodin "maybe once or twice a week" as well as taking Skelaxin.  Before the Vicodin he was

taking Darvocet.  He stated the pain killers "don't really help" and make him lethargic and

constipated. (Tr. 244-45.)

Plaintiff discussed surgery with his treating physician but was told that the surgery would

preclude him from working because he would not be able to bend after the insertion of the rods.

(Tr. 243.)

Plaintiff testified that he is able to walk three blocks after which he has a lot of pain. (Tr.

245.)  He reports he can sit comfortably for about 15 to 20 minutes and stand for 20 minutes. (Tr.

246.)  He spends his day reading the newspaper, and watching television and movies; he has no

hobbies. (TR. 246-48.)  He stopped playing softball several years before his injury.  He no longer

swims, goes to the beach or attends sporting events because of his injury.  (Tr. 247.)

### B.    *Medical Evidence - Treating Physicians*

#### 1.    *Dr. John Rothar*

Dr. John Rothar treated Plaintiff on January 29, 2004 when Plaintiff reported that he

injured his back at work lifting a 200 pound pipe cutter.  Dr. Rothar prescribed anti-inflammatory

medication (Vioxx) and a muscle relaxant (Skelaxin) and told Plaintiff to stay out of work until February 2, 2004. (Tr. 111-112.)  Dr. Rothar's notes indicate that he saw Plaintiff on April 21 and May 19, 2004 but the treatment notes are illegible.  (Tr. 115.)  Dr. Rothar did, however, complete a Workers' Compensation Board  "Attending Doctor's Report" for the April and May visits indicating that Plaintiff was not disabled from his regular duties.  (TR. 113-14.)  Dr. Rothar also completed a disability questionnaire on June 2, 2005 based on the above visits.  On the questionnaire, he indicated he could not provide a medical opinion as to Plaintiff's ability to do work-related activities, although he indicated "unable to sit longtime; altered standing." (Tr. 116-21.)

### 2.      *Dr. Vincent Leone - Orthopedic Surgeon*

Plaintiff's first visit to Dr. Leone was on June 16, 2004.  Dr. Leone's examination of Plaintiff revealed the following: right paravertebral muscular spasm; full motor strength; normal sensation; range of motion was full to flexion and extension; lateral tilt ability limited to twenty degrees to the right but full to the left; and reflexes equal and symmetrical to knee jerk and ankle jerk testing.  Dr. Leone reported that x-rays of Plaintiff's lumbar spine showed mild degenerative changes.  According to Dr. Leone, Plaintiff "continues to be totally disabled."  (Tr. 157-58.)

Plaintiff returned to Dr. Leone on July 19, 2004, to discuss his MRI.  According to Dr. Leone, the MRI showed an L2-3 left far lateral disc herniation with no significant central compression, which Dr. Leone considered helpful as it accounted for Plaintiff's symptoms.  Dr. Leone did not think surgery or steroid injections were appropriate and recommended conservative treatment and physical therapy. (Tr. 156.)

Dr. Leone saw Plaintiff again on August 28, 2004, and found he continued to show

limited range of motion and mildly positive tension signs to lower extremity. Dr. Leone gave him a prescription for physical therapy and found Plaintiff "continues to be disabled regarding any work until he completes his course of therapy." (Tr. 155.)

On October 25, 2004, Plaintiff returned to Dr. Leone complaining he continued to be sore and had some neck stiffness and weakness in the shoulders. Dr. Leone's physical examination of Plaintiff's lower back revealed no change. He noted he would attempt to get approval for acupuncture for pain management and that Plaintiff wanted to defer epidurals at that time. (Tr. 154.)

On his return to Dr. Leone on December 20, 2004, Plaintiff complained of worsening symptoms with increased spasms on the left and reported pain radiating into the back of the thigh to the knee. Plaintiff denied any new trauma. The physical examination revealed the following: right paravertebral muscular spasm; reflexes diminished to the right ankle jerk to 1/4 compared to 2/4 on the left; knee jerks were 2+/4 bilaterally; a restricted range of motion secondary to pain; and mildly positive tension signs on the left. Dr. Leone obtained x-rays which showed degenerative disc disease and paravertebral muscular spasm. His diagnostic impression was lumbar herniated disc with radiculopathy. Dr. Leone ordered a new MRI. (Tr. 153.)

Dr. Leone next saw Plaintiff on February 14, 2005, at which he reviewed the result of the MRI. The MRI showed an L2-3 left-sided herniation without interval change and multilevel degenerative disc disease. According to the doctor, Plaintiff's overwhelming problem was "back pain over leg symptoms." Dr. Leone's notes indicate he discussed operative versus non-operative treatment and that Plaintiff wanted to avoid epidurals or surgery. According to the doctor, Plaintiff continued to be disabled regarding work. (Tr. 152.)

Plaintiff saw Dr. Leone again on April 23, 2005, complaining of continued back pain with radiation down his left leg and newfound radiation down the right leg. Dr. Leone's examination found a range of motion which was full to flexion, extension and limited to lateral tilting in the lumbar spine. Plaintiff's motor strength was 4/5 throughout, his sensation was intact, and he had a positive straight leg raise test on the left and the right. Dr. Leone noted that Plaintiff, having failed a full course of conservative treatment, was considering surgery and, also, Plaintiff continued to be disabled. (Tr. 151.)

Plaintiff returned to Dr. Leone on June 8, 2005, complaining of back soreness with radicular symptoms in the leg and that sitting was most difficult. The physical examination revealed no interval change. Dr. Leone's notes indicate he discussed with Plaintiff the need for a pre-operative MRI and, if the MRI was positive, the need for a microlaminotomy discectomy and that he should continue to be out of work until the updated MRI was obtained. (Tr. 150.)

When Dr. Leone saw Plaintiff again on July 20, 2005, the physical examination showed no change. (Tr. 149.)

On September 2, 2005, Plaintiff saw Dr. Leone at which time the results of the MRI were discussed. According to Dr. Leone's notes the MRI showed a left-sided focal herniation at L2-3 and degenerative disease at L3-4 which did not corroborate Plaintiff's right-sided symptoms. Dr. Leone recommended that surgery be suspended and Plaintiff have a detailed neurologic consultation with a Dr. Murthy. (Tr. 148.)

Plaintiff returned to Dr. Leone on September 8, 2005, complaining of persistent symptoms and worsening back pain, along with leg symptoms. Dr. Leone's examination revealed restricted range of motion and intact neurological findings. X-rays showed significant

degenerative disease at L2-3 and L3-4 which worsened and no instability. Dr. Leone continued to consider Plaintiff disabled regarding work. (Tr. 225.)

On November 1, 2006, Dr. Leone reviewed the results of the MRI with Plaintiff. According to Dr. Leone, the MRI showed a new herniation at L2-3 left-sided and a right-sided L4-5 herniation and Plaintiff's "problem is one of ongoing degenerative disease and herniation, secondary to an injury at work." The doctor noted Plaintiff "was given refills of his medication and in addition was increased his pain med[ication]s to Vicodin from Darvocet." and that Plaintiff continued to be disabled. (Tr. 224.)

Plaintiff returned for a follow-up on January 3, 2007. Dr. Leone's notes indicate continuing complaints of "back pain with radicular symptoms[;]" "increasing activity and weather changes produce worsening pain." The physical examination revealed no interval changes. According to the notes, Dr. Leone concluded that Plaintiff "has a moderate permanent partial disability." (Tr. 223.)

Dr. Leone completed a "Medical Assessment of Ability to do Work-Related Activities" questionnaire as to Plaintiff in March 2007. As set forth on the form, Dr. Leone reported that Plaintiff could (1) lift and carry 15 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for 30 minutes without interruption and for up to 2 hours in an 8 hour workday; sit for 2 hours in an 8 hour workday but not for more than 15 minutes at a time. He opined that these limitations were due to a herniated lumbar disc which was aggravated by lifting at work, as well as low back pain which radiated into his legs.

On March 19, 2007, in a letter to Plaintiff's counsel, Dr. Leone opined that Plaintiff had a permanent partial disability due to herniated discs at L2-3 and L4-L5. He specified that the

restrictions on repetitive bending, twisting, lifting no more than 10 to 15 pounds or sitting for more than thirty consecutive minutes set forth in March 2007 assessment should be applied beginning on August 19, 2005, the date objective documentation in the form of an MRI established Plaintiff's lumbar problem. (Tr. 229.)

### 3. *Lumbar Spine MRI's*

The record contains four MRI's of Plaintiff's lumbar spine.

The first MRI was taken on July 8, 2004 using T1 and T2 magnets. It revealed (1) a small left far lateral herniation producing very minimal narrowing of the far lateral aspect of the left L2-3 neural foramen; and (2) at the L3-4 disc a mild desiccation with mild circumferential degenerative type bulging with no evidence of a focal herniation. The remaining lumbar discs maintain normal height, hydration and signal contour. The spinal canal was of normal caliber and the lateral recesses were well maintained. The Lumbar lordotic curve was normal, the vertebral body heights preserved, and there were no vertebral compression deformities. The radiologist's impression was a small left far lateral L2-3 disc herniation and mild chronic L3-4 degenerative changes. (Tr. 162.)

Another MRI was taken approximately six months later on January 28, 2005. It revealed (1) a left lateral disc herniation at L2-L3 contacting the exiting left L2 nerve root; (2) at L3-L4 a mild loss of disc height and mild diffuse disc bulge; and (3) a minimal disc bulge at L4-L5. There was no spinal stenosis at any level and the conus medullaris was normal in position, configuration and signal characteristics. According to the radiologist, there was no suspicious interval change when compared to the July 2004 MRI "allowing for differences in technique." (Tr. 160.)

Plaintiff underwent a third MRI on August 19, 2005. It revealed (1) at L2-3 a left foraminal disc herniation which touches the exiting nerve root and appeared unchanged from the July 8, 2004 MRI; and (2) at L3-4 there was mild disc bulging with no focal disc herniation, central canal or foraminal stenosis. The remaining lumbar disc showed preserved height and signal with no evidence for disc herniation, central canal or foraminal stenosis. Vertebral body height, marrow signal visualized and conus contour were normal. The radiologist's impression was that left foraminal disc herniation at L2-3 appeared unchanged and mild degenerative changes at L3-4 appeared stable. (Tr. 159.)

The fourth MRI contained in the record was taken on September 18, 2006 using a 3 Telsa magnet. According to the radiologist, the MRI showed a mild disc bulge with mild disc desiccation at L2-L3 and a left foraminal disc herniation contacting the exiting left L2 nerve root. It also showed a minimal disc bulge at L3-L4 with mild loss of disc space height. At L4-L5, there is mild disc bulge with questionable more focal right foraminal disc herniation and mild disc bulge at L5-S1. The radiologist's impression was left lateral disc herniation, L2-L3 and a suspected small right foraminal disc herniation, L4-L5. The radiologist noted that with respect to the suspected right foraminal disc herniation, "[t]his is seen only on the axial imaging (image 24/31) and cannot be confirmed on the sagittal images." (Tr 190.)

### C. Medical Evidence - Non-Treating Physicians

#### 1. Dr. David Benetar

Dr. Benetar conducted an independent medical (orthopedic) examination of Plaintiff on August 27, 2004, at the request of AIG Claims Service in connection with Plaintiff's worker compensation claim. Dr. Benetar's report first recites the accident history, the treatment

following condition, additional and prior injuries and past medical history, all as related by Plaintiff. Dr. Bentar then notes he reviewed Dr. Leone's report dated June 16, 200, x-ray of orbits, July 8, 2004 MRI and various progress notes. Upon examining Plaintiff, Dr. Benetar noted:

> He complained of tenderness in the right-sided paraspinals in the lumbar region at approximately L2 through L4 and axially in the similar region. The left side is relatively non-tender. There is spasm when he was erect but with side bending the spasm relaxed. This is, therefore, physiologic. Straight leg raise caused low back pain bilaterally at 90º, which is a negative examination. Reflexes were symmetric. There were no motor or sensory deficits in his lower extremities. He flexed to approximately 80º and complained of distal low back pain. He extended 20º without complaints. Left side bending caused right-sided low back pain at 20º and mildly at 20º with right side bending. There was no myelopathy on the examination. No deformity was noticed on inspection.

Dr. Benetar's impression was post work related injury with lumbosacral sprain/strain. He recommended physical therapy and did not think that Plaintiff had yet reached his maximum medical improvement. He felt Plaintiff had a mild to moderate temporary, partial disability and should be able to return to work. (Tr. 124-27.)

### 2. Bonnie Corey, D.C.

On May 11, 2005, Bonnie Corey, a chiropractor, conducted an independent chiropractic examination of Plaintiff and issued a report thereon the same date. Ms. Corey's diagnosis was "[s]tatus post lumbar spine sprain/strain, resolved." She based this upon the history given by Plaintiff, "the medical records and tests provided, the results of pain status and physical findings." She noted that although Plaintiff continued to have subjective complaints, "there was no objective basis to support any restrictions at this time." She concluded that Plaintiff has reached "maximum medical improvement" within the scope of chiropractice and, from a

"chiropractic standpoint," Plaintiff was capable of returning to work provided no lifting of more than 25 pounds was required.  (Tr. 128-33.)

### 3.  Dr. Linell Skeene

On June 6, 2005, Dr. Linell Skeene examined Plaintiff for the New York State Department of Disability Determination.  In his report of the examination, Dr. Skeene noted that Plaintiff was in no acute distress; he walked with a limp and could not walk on his heels but could walk on his toes.  Dr. Skeene's examination of the lower back revealed mild tenderness over lower lumbar spine and moderate paraspinal muscle spasm in the lumbar spine region.  Straight leg raising test was negative bilaterally and there was limited range of motion of right ankle.  Reflexes were normal and equal and no muscle atrophy and no sensory deficits were reported.  Dr. Skeene's diagnosis was disc disease of lumbar spine and status post open reduction internal fixation of the right ankle with instrumentation in place, with a fair prognosis.  He opined that Plaintiff has a mild limitation for prolonged standing and heavy lifting due to tenderness over the lumbar spine and limited range of motion of the right ankle.  (Tr. at 135-38.)

### 4.  Dr. Bruce Meinhard

Dr. Bruce Meinhard examined Plaintiff on December 6, 2005, for AIG Claims Services.  His examination revealed tenderness in Plaintiff's lumbar region, which is diffuse on the right and left side at the level of L4 region.  Plaintiff's sciatic notches were non-tender to palpitation.  His knee and ankle jerks were symmetric and L1-S1 innervated muscles were symmetrically strong.  Plaintiff flexed forward 70 degrees and lateral bending was performed to 20 degrees left and right.  Dr. Meinhard diagnosed a low back injury on January 26, 2004, with workup still pending.  He reported that Plaintiff was a candidate for epidural injections and that he would

benefit from flexion, extension, lumbar spine lateral x-rays to determine if there is instability.  He

also noted that "strong consideration" should be given for a "lumbar diskography to determine

whether or not his pain can be repeated and whether or not there is significantly localized

degenerative and painful disk during the procedure . . . . "  Dr. Meinhard thought it would be

helpful to review Plaintiff's EMG but the report thereon was not available.  He concluded that

"at the present time [Plaintiff] is at temporary total disability."  (Tr. 186-89.)

### 5.  James Oliva

On July 13, 2005, James Oliva, a disability analyst with the New York State Division of

Disability Determinations conducted a review of available medical records and completed a

residual functional assessment for the purpose of adjudicating Plaintiff's claim for disability

benefits.  According to Mr. Oliva, Plaintiff could lift and carry 50 pounds occasionally, 25

pounds frequently and could stand, sit and walk for 6 hours in an 8 hour day.  He found

Plaintiff's complaints of pain credible but not to the extent alleged.  (Tr. 140-44.)

### III.   The Issue on Appeal

Pursuant to 20 C.F.R. §§ 404.101, 404.120 and 404.315(a), a person qualifies for social

security benefits if he is both disabled and insured for disability.  *Id.*  Here, the parties agree that

the only issue on appeal is whether the ALJ erred in finding that Plaintiff was not entitled to

disability insurance benefits.

## DISCUSSION

### I.   Standard of Review

#### A.    Review of the ALJ's Decision

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42

U.S.C. § 405(g). The Court may set aside a determination of the ALJ only if it is "based upon

legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d

Cir. 1999) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a

mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to

support a conclusion.'" *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the findings of the

Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. §

405(g), and thus, the reviewing court does not decide the case de novo. *Halloran v. Barnhart*,

362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus the only

issue before the Court is whether the ALJ's finding that Plaintiff was not eligible for disability

benefits prior to February 7, 2006 was "based on legal error or is not supported by substantial

evidence." *Rosa*, 168 F.3d at 77.

### B.    *Eligibility for Disability Benefits*

To be eligible for disability benefits under the Social Security Act (the "SSA"), a

claimant must establish that he is unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The SSA further states that this impairment must be "of

such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

### C.     The Treating Physician Rule

Social Security regulations require that an ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa,*

168 F.3d at 78-79. The "treating physician rule" does not apply, however, when the treating physician's opinion is inconsistent with the other substantial evidence in the record, "such as the opinions of other medical experts." *Halloran,* 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling weight, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran,* 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. *Id.* § 404.1527(d)(2)(I-ii) & (d)(3-6); *see also Halloran*, 362 F.3d at 32. Furthermore, when giving the treating physician's opinion less than controlling weight, the ALJ must provide the claimant with good reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

In addition, it is clearly stated law in the Second Circuit that "while a treating physician's *retrospective* diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (emphasis added); *see also Rivera v. Sullivan*, 923 F.2d 964 (2d Cir. 1991) (reviewing Second Circuit law on retrospective diagnosis and reversing denial of benefits where retrospective diagnosis of treating physician not given sufficient weight with regard to degenerative condition).

Finally, the ALJ may not reject the treating physician's conclusions based solely on inconsistency or lack of clear findings without first attempting to fill the gaps in the

administrative record.  *Rosa*, 168 F.3d at 79.  "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Butts v. Barhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'") (quoting *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001)), *amended on other grounds on rehearing*, 416 F.3d 101 (2d Cir. 2005).  Specifically, this duty requires the Commissioner to "seek additional evidence or clarification" from the claimant's treating sources when their reports "contain[ ] a conflict or ambiguity that must be resolved" or their reports are "inadequate for [the Commissioner] to determine whether [claimant] is disabled."  20 C.F.R. §§ 404.1512(e), (e)(1).  The Commissioner "may do this by requesting copies of [the claimant's] medical source's records, a new report, or a more detailed report from [the claimant's] medical source."  *Id.* § 404.1512(e)(1).  The only exception to this requirement is where the Commissioner "know[s] from past experience that the source either cannot or will not provide the necessary findings."  *Id.* § 404.1512(e)(2).  If the information obtained from the claimant's medical sources is not sufficient to make a disability determination, or the Commissioner is unable to seek clarification from treating sources, the Commissioner will ask the claimant to attend one or more consultative evaluations.  *Id.* § 404.1512(f).

**II.**     ***The ALJ's Decision***

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had satisfied the first two steps, to wit: (1) Plaintiff had not engaged in substantial

gainful activity since May 16, 2004; and (2) Plaintiff had severe impairments related to lumbar disc disease with a herniated disc at L2-3. The ALJ concluded that Plaintiff did not meet the third step, however, because his impairments neither met nor equaled in severity any impairment in the Listing of Impairments, Appendix 1, Subpart P, Part 404 of the Regulations. Because the ALJ found that Plaintiff's ailments did not qualify as a per se disability under the listings, the ALJ went on to analyze the fourth factor, i.e., whether Plaintiff's impairments precluded performance of his past relevant work. The ALJ found that they did.

Once the ALJ determined that Plaintiff was not able to perform his past work, the ALJ analyzed the fifth and final step, viz. whether the Commissioner had established that there was other work Plaintiff could have performed. In this regard, the ALJ found that despite Plaintiff's impairments,

> [Plaintiff] retains the residual functional capacity to perform sedentary work in that, during the course of an eight hour workday, he can sit for up to 6 hours, stand/walk up to two hours and lift/carry up to ten pounds.

(Tr. 22.) Thus, the ALJ found that Plaintiff was not disabled under the SSA. (*Id.*)

III.    *Application of the Governing Law to the Present Case*

Plaintiff asserts the following arguments in support of his contention that the ALJ's decision should be overturned: (1) the ALJ failed to follow the treating physician rule; and (2) the ALJ failed to make an adequate credibility assessment. The Court will address each in turn.

1.    *The Treating Physician's Rule*

Plaintiff maintains that the ALJ failed to follow the treating physician rule and give

controlling weight to the medical opinions and conclusions of his treating physician, Dr. Leone, in determining his residual functional capacity.

The ALJ found that although Plaintiff's impairments were severe and he was unable to perform his past work, Plaintiff had the residual functional capacity to perform sedentary work. In making this determination, the ALJ state as follows:

> The majority of Dr. Leone's care was routine consisting of prescriptions for medication and physical therapy. On September 2, 2005, he recommended suspending a planned macro laminotomy, pending a complete neurological work up . . . .Of note, in a report from Dr. Bruce Meinhard . . . he noted that claimant stated that he was . . . advised that he was neurological intact . . . . Repeat MRI scanning performed on September 18, 2006 again confirmed the presence of a herniated disc at L2-3. On September 8, 2006 Dr. Leone noted a restricted range of lumbar motion, but found the claimant neurologically intact; on November 1, 2006 he changed the claimant's medication and on January 3, 2007 noted there was no change in physical examination and characterized him as "moderately permanently partially disabled." However, in a residual functional capacity assessment dated March 7, 2007, Dr. Leone furnished a profile inconsistent with all work activity in that, during the course of an eight hour work day, he opined that the claimant could sit for only two hours, stand/walk two hours and lift/carry up to 15 pounds. The Administrative Law Judge has carefully considered this assessment which is given little weight as this conclusion is contradicted by both Dr. Leone's own clinical examination and prior characterizations as well as by the lack of neurological involvement.
>
> Independent evidence of the claimant's status is furnished via an Administration requested consultative examination performed on June 6, 2005 by Dr. L. Skeene. Dr. Skeene noted lumbar disc disease. However, physical examination failed to support a finding of disability. More specifically, claimant was unable to heel walk, but toe walked without difficulty He was able to fully squat. Examination of the cervical spine and upper extremities were within normal limits. Examination if the cervical spine and upper extremities were within normal limits. Examination fo the thoracic and lumbar spines revealed full flexion and extension, full lateral

> flexion and full rotary movements. Mild tenderness and spasm in
> the lumbar area was noted. However, there was no SI joint or
> sciatic notch tenderness. Straight leg raising was negative
> bilaterally. Functionally, Dr. Skeene furnished a profile consistent
> with sedentary work as he only noted mild limitation regarding
> prolonged standing and heavy lifting.

(Tr. 20-21.) He further summarily concluded that Plaintiff's subjective allegations of his pain were not credible.

After reviewing the ALJ's decision, and for the reasons that follow, the Court finds that the ALJ failed to accord the opinion of Dr. Leone, a treating physician, sufficient weight. Further, to the extent there were discrepancies in the record concerning plaintiff's functional abilities, the Court finds that the ALJ erred in failing to develop the record to fill this void.

First, the ALJ failed to acknowledge that in addition to the herniation at L2-3, Plaintiff's September 2006 MRI's showed a suspected right foraminal disc herniation at L4-L5, which would corroborate the right-sided symptoms noted by Dr. Leone and which led him to suspend surgery pending a neurological consult (*See* Tr. 148.)

Second, the ALJ failed to note that Dr. Leone's assessment was corroborated by another Orthopedist, Dr. Meinhard. Dr. Meinhard's concluded that Plaintiff was at "temporary total disability" and recommended surgical options be explored. In addition, the MRI's taken subsequent to Dr. Meinhard's examination did not reveal any improvement in Plaintiff's condition. If anything, the subsequent MRI's suggested additional damage.

Both the September 2006's revelation of a right foraminal disc herniation and Dr. Meinhard's opinion, if considered, would have supported Dr. Leone's functional capacity assessment. Instead, the ALJ adopted, in wholesale fashion, the opinion of Dr. Skeene, who has

no apparent speciality in orthopedics and whose report omits any reference to the herniation at L2-3, without discussing the consistency of Dr. Leone's opinion with the entirety of the record, including Dr. Meinhard's opinion.

Here, in rejecting the findings of two orthopedic specialists and finding the lack of neurological involvement was inconsistent with a finding of disability, the ALJ "improperly 'set his own expertise against that of' the treating physician." *Rosa*, 168 F.3d at 79 (quoting *Balsamo v. Chater*, 143 F.3d 75, 81 (2d Cir. 1998.)).

Finally, with respect to the alleged inconsistency between Dr. Leone's January 2007 characterization of Plaintiff as "moderately permanently partially disabled" and his March 2007 residual functional assessment, the ALJ may not reject the treating physician's conclusions based solely on inconsistency or lack of clear findings without first attempting to fill the gaps in the administrative record. *Rosa*, 168 F.3d at 79. "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the 'essentially non-adversarial nature of a benefits proceeding.'" even if the claimant is represented by counsel. *Pratte v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Butts v. Barhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("It is the ALJ's duty to investigate and develop facts and develop arguments both for and against the granting of benefits."); 20 C.F.R. §§ 404.1512(e), (e)(1).

## 2. *Plaintiff's Subjective Complaints*

Plaintiff argues that the ALJ failed to properly assess Plaintiff's subjective complaints.

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his symptoms in determining whether he is disabled. *See* 20 C.F.R. § 404.1529(a). An

ALJ should compare subjective testimony regarding the frequency and severity of symptoms to objective medical evidence. *Id.* § 404.1529(b). If a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight." *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). However, if a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered. *See* 20 C.F.R. § 404.1529(c)(3). These include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. *Id.*

In addition, SSR 96-7p provides in pertinent part:

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (July 2, 1996). Absent such findings, a remand is required. *See, e.g.*, *Schultz v. Astrue*, No. 04-CV-1369, 2008 WL 728925, at *12 (N.D.N.Y. Mar. 18, 2008).

Here, the ALJ found as follows:

The credibility of claimant's pain is not supported by his infrequent use of Vicodin one or two times per week. . . . . the Administrative Law Judge has carefully considered the claimant's subjective symptomatology in accordance with 20 CFR 404.1529 and Social Security Ruling 96-6p. As the record fails to document any severe functional restrictions which would prevent work, and as the

21

claimant's alleged symptomatology and subjective restrictions stemming therefrom are largely unsubstantiated by the medical evidence, such symptomatology cannot be characterized as debilitating. In this regard, I once again note the routine and symptomatic nature of the claimant's treatment.

(Tr. 21.)

The Court finds that not withstanding the traditional deference given an ALJ with respect to credibility, *see Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) the ALJ's decision to disregard Plaintiff's testimony in this case was not supported by substantial evidence. To the extent Plaintiff's reported subjective symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record, an analysis into Plaintiff's subjective complaints was required. The ALJ concluded that Plaintiff's testimony was not persuasive, yet failed to state what allegations, if any, he found to be credible, the weight given to Plaintiff's statements and the reasons for affording such weight. *See* SSR 96-7. Moreover, to the extent that the ALJ, on remand, considers new evidence in applying the treating physician rule to Plaintiff's claim, *see infra*, the ALJ should also consider whether that reevaluation alters his assessment of Plaintiff's subjective testimony in light of the evidence as a whole, including Plaintiff's prior work history. *See, e.g., Rivera v. Schweiker*, 717 F.2d 719, 724, 725 (2d Cir. 1983); *Schaal v. Apfel*, 134 F.3d 499, 502 (2d Cir. 1998).

### III.    *The Matter is Remanded*

"Courts have declined to remand if the record shows that a finding of disability is compelled and only a calculation of benefits remains." *Medina v. Apfel*, No. 00-CV-3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001). "Conversely, if the record would permit a conclusion by the Commissioner that the plaintiff is not disabled, the appropriate remedy is to

remand for further proceedings." *Id.* (internal quotation marks and citations omitted).  On this record, the Court cannot conclude whether Plaintiff had the ability to perform sedentary work during the relevant period.  Accordingly, the case is remanded to allow the ALJ to reweigh the evidence, developing the record as may be needed.   *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.  Remand is particularly appropriate where, as here, we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision.") (internal citations and quotation marks omitted).  Upon remand, the ALJ shall set forth his findings with particularity so that the Court may adequately review the record.

### CONCLUSION

For all of the reasons stated above, both Plaintiff's and the Commissioner's motions for judgment on the pleadings are **DENIED** and this case is remanded for further administrative proceedings consistent with this opinion.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated:   Central Islip, New York
          March 31, 2009

                                          /s /_____
                                          Denis R. Hurley
                                          United States District Judge